**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  1:23-cv-02511-DDD-STV

DAVID PLOWDEN, MARIO ORTEGA, and
KAMILLE FAYE VINLUAN-JULARBAL
individually and on behalf of all others similarly
situated,

        Plaintiffs,

v.

SIMILASAN CORP.,

        Defendant.

---

**DEFENDANT'S MOTION TO DISMISS
THE CONSOLIDATED CLASS ACTION COMPLAINT**

---

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ....................................................................................................1

II. FACTUAL BACKGROUND ...................................................................................2

    A. Regulatory Framework for Homeopathic Drugs ........................................2

    B. Allegations of Plaintiffs' Complaint .........................................................3

III. LEGAL STANDARDS ............................................................................................6

IV. ARGUMENT ...........................................................................................................7

    A. THE COMPLAINT MUST BE DISMISSED FOR LACK OF STANDING (RULE 12(b)(1)) ...............................................................7

        1. Plaintiffs Lack Article III Standing..............................................7

        2. Plaintiffs Lack Standing to Bring Claims Based on Products They Never Purchased ........................................................9

        3. Plaintiffs Lack Standing to Bring Nationwide and "Multi-State" Consumer Protection Classes...................................10

    B. THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A VIABLE CAUSE OF ACTION (RULE 12(b)(6))..............11

        1. The Heightened Pleading Standard of Rule 9(b) Applies.........................11

        2. Plaintiffs Fail to Allege a Viable Consumer Claim .................................12

            a. Plaintiffs have not alleged a deceptive or unfair practice ............ 12

            b. Plaintiffs have not alleged actual damages ................................... 16

        3. Plaintiffs' Claim for Violation of Other State Consumer Protection Statutes Is Insufficiently Pled ...................................................18

        4. Plaintiffs are not entitled to equitable relief because they have an adequate remedy at law............................................................18

        5. Plaintiffs Fail to Allege Facts Sufficient to State a Claim for Unjust Enrichment/Quasi-Contract .......................................................19

        6. Plaintiffs' Breach of Warranty Claims Fail as a Matter of Law. ..............21

        7. Plaintiffs' Fraudulent Omission Claim Fails ...........................................24

            a. The Economic Loss Rule Bars Plaintiffs' Fraudulent Omission Claim................................................................................ 24

            b. Plaintiffs Fail to Plead a Fraudulent Omission Claim .................. 25

C.    PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES MUST BE
      STRICKEN (RULE 12(f)) ......................................................................................27

V.    CONCLUSION ................................................................................................................28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adamson v. Ortho-McNeil Pharm., Inc.*,
　463 F. Supp. 2d 496 (D.N.J. 2006) ........................................................................19

*Allegra v. Luxottica Retail N. Am.*,
　341 F.R.D. 373 (E.D.N.Y. 2022) ............................................................................25

*Ansari v. NCS Pearson, Inc.*,
　No. CIV 08-5351(JRT/JJG), 2009 WL 2337137 (D. Minn. July 23, 2009) ...........11

*Anthony v. Sec. Pac. Fin. Servs., Inc.*,
　No. 94 C 2026, 1995 WL 88998, (N.D. Ill. Feb. 24, 1995)....................................27

*Asghari v. Volkswagen Grp. of Am., Inc.*,
　42 F. Supp. 3d 1306 (C.D. Cal. 2013) ...................................................................25

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)............................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)................................................................................................7

*Beltran v. InterExchange, Inc.*,
　No. 14-CV-03074-CMA-CBS, 2018 WL 1948687 (D. Colo. Feb. 2, 2018)..........10

*Blackburn v. Etsy, Inc.*,
　No. 23-5711, 2023 WL 9105662 (C.D. Cal. Oct. 12, 2023)....................................9

*Bossart v. Gen. Motors LLC*,
　2021 WL 5278191 (E.D. Mich. May 19, 2021) .....................................................19

*Brooks v. Mentor Worldwide LLC*,
　985 F.3d 1272 (10th Cir. 2021) .............................................................................13

*Buckman Co. v. Plaintiffs' Legal Comm.*,
　531 U.S. 341 (2001)...............................................................................................13

*Caplinger v. Medtronic, Inc.*,
　784 F.3d 1335 (10th Cir. 2015) .............................................................................13

*Carriuolo v. Gen. Motors Co.*,
    823 F.3d 977 (11th Cir. 2016) ............................................................................13

*City First Mortg. Corp. v. Barton*,
    988 So. 2d 82 (Fla. Dist. Ct. App. 2008) ................................................4, 13, 17, 25

*COPE v. Kansas State Bd. of Educ.*,
    821 F.3d 1215 (10th Cir. 2016) ...........................................................................6

*Cunningham v. Standard Fire Ins. Co.*,
    2008 WL 4371929 (D. Colo. Sept. 23, 2008) .......................................................27

*DJ Lincoln Enters., Inc. v. Google LLC*,
    No. 21-12894, 2022 WL 203365 (11th Cir. Jan. 24, 2022) ....................................11

*Edwards v. ZeniMax Media Inc.*,
    No. 12-CV-00411-WYD-KLM, 2013 WL 5420933 (D. Colo. Sept. 27, 2013).....................20

*Elvig v. Nintendo of America, Inc.*,
    2010 WL 3803814 (D.Colo. 2010) .......................................................................23

*Fiberglass Component Prod., Inc. v. Reichhold Chems., Inc.*,
    983 F. Supp. 948 (D. Colo. 1997) .......................................................................21

*Forba Holdings, LLC v. Licsac, LLC*,
    No. 09-cv-02305-CMA-MJW, 2010 WL 148267 (D. Colo. Jan. 11, 2010)..........................22

*Francis v. Mead Johnson & Co.*,
    Civ. Action No. 1:10-cv-00701-JLK, 2010 WL 5313540 (D. Colo. Dec. 17,
    2010) ..............................................................................................11, 20, 22

*Frank v. Gaos*,
    139 S.Ct. 1041 (2019)........................................................................................9

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007)...............................................................................11

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
    304 F.R.D. 601 (D. Colo. 2015) ...........................................................................9

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*,
    713 F. Supp. 2d 215 (S.D.N.Y. 2010) ..................................................................19

*George v. Jaguar Land Rover N. Am. LLC*,
    No. 2:20-CV-17561 (WJM), 2021 WL 5195788 (D.N.J. Nov. 8, 2021)................................11

*Grp. Health Plan, Inc. v. Philip Morris, Inc.*,
  86 F. Supp. 2d 912 (D. Minn. 2000) ....................................................................19

*Haffner v. Stryker Corp.*,
  No. 14-CV-00186-RBJ, 2014 WL 4821107 (D. Colo. Sept. 29, 2014)..................................22

*Harris Grp. v. Robinson*,
  209 P.3d 1188 (Colo. App. 2009) .......................................................................20

*Hendricks v. StarKist Co.*,
  30 F. Supp. 3d 917 (N.D. Cal. 2014) ...................................................................20

*Hess v. Philip Morris USA, Inc.*,
  175 So. 3d 687 (Fla. 2015)............................................................................25

*Hetrick v. Ideal Image Dev. Corp.*,
  372 Fed.Appx. 985 (11th Cir. 2010)....................................................................16

*Holistic Candlers & Consumers Ass'n v. FDA*,
  664 F.3d. 940 (D.C. Cir. 2012) .........................................................................5

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*,
  483 F. Supp. 3d 838 (C.D. Cal. 2020) ..................................................................24

*In re Natera Prenatal Testing Litig.*,
  664 F. Supp. 3d 995 (N.D. Cal. 2023) ..................................................................26

*In re Packaged Ice Antitrust Litig.*,
  779 F. Supp. 2d 642 (E.D. Mich. 2011).................................................................11

*Inorio v. Wells Fargo Bank, N.A.*,
  522 F. Supp. 3d 417 (N.D. Ill. 2021) ..................................................................19

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .........................................................................11

*Khalik v. United Air Lines*,
  671 F.3d 1188 (10th Cir. 2012) .........................................................................7

*Koch v. Koch Indus., Inc.*,
  203 F.3d 1202 (10th Cir. 2000) ........................................................................12

*Kousis v. Fid. & Guar. Ins. Underwriters, Inc.*,
  No. 22-06530 ,2023 WL 6141237 (D.N.J. Sept. 20, 2023) ...............................................27

*Lawrie v. Ginn Dev. Co.*,
No. 3:09-CV-446-J-32JBT, 2014 WL 4788067 (M.D. Fla. Sept. 19, 2014) ..........................26

*Lemberg v. Tuuk*,
No. 06 CV 00259-MSK-MEH, 2006 WL 446090 (D. Colo. Feb. 21, 2006) ..........................18

*Lorusso v. Boulder Brands, Inc.*,
No. 15-CV-00679-MSK-KMT, 2017 WL 4334070 (D. Colo. Feb. 27, 2017)..........................5

*Luciano v. Perez*,
No. CIVA06CV01284PSFPAC, 2007 WL 1306476 (D. Colo. May 3, 2007) ........................27

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..........................................................................................................6, 7

*Macias v. HBC of Florida, Inc.*,
694 So. 2d 88 (Fla. Dist. Ct. App. 1997) ..........................................................................16

*Marolda v. Tisbury Towing & Transportation Co.*,
No. CV 4:19-10496, 2022 WL 13842068 (D. Mass. Oct. 21, 2022)......................................27

*Martin v. Mead Johnson Nutrition Co.*,
No. 09-cv-11609, 2010 WL 3928707 (D. Mass. Sept. 30, 2010)...........................................11

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) ..............................................................................................8

*McGinity v. The Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) ......................................................................................12, 14

*MediNatura, Inc. v. Food & Drug Admin.*,
998 F.3d 931 (D.C. Cir. 2021) ............................................................................................3

*Meserey v. U.S.A.*,
447 F. Supp. 548 (D. Nev. 1977) ........................................................................................3

*MH Pillars Ltd. v. Realini*,
277 F. Supp. 3d 1077 (N.D. Cal. 2017) ..............................................................................19

*Millennium Health, LLC v. EmblemHealth, Inc.*,
240 F. Supp. 3d 276 (S.D.N.Y. 2017)..................................................................................15

*Miller v. Ford Motor Co.*,
620 F. Supp. 3d 1045 (E.D. Cal. 2022)................................................................................21

*Mishkin v. Zynex Inc.*,
    No. 09-CV-00780-REB-KLM, 2011 WL 1158715 (D. Colo. Mar. 30, 2011).......................11

*Mourad v. Marathon Pet. Co. LP*,
    129 F. Supp.3d 517 (E.D. Mich. Sept. 15, 2015)....................................................................27

*Muy v. Int'l Bus. Machines Corp.*,
    No. 4:19CV14-MW/CAS, 2020 WL 13470560 (N.D. Fla. Apr. 10, 2020) ...........................26

*Myers-Armstrong v. Actavis Totowa, LLC*,
    No. C 08–04741 WHA, 2009 WL 1082026 (N.D. Cal. Mar. 29, 2009).............................8, 17

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) .....................................................................................8

*Nemykina v. Old Navy, LLC*,
    461 F. Supp. 3d 1054 (W.D. Wash. 2020)..............................................................................11

*Nicolosi v. BRG Sports, Inc.*,
    18 CV 1452, 2019 WL 5695852 (E.D.N.Y. Aug. 21, 2019) ...................................................27

*OraLabs, Inc. v. Kind Grp. LLC*,
    Civ. Action No. 13–cv–00170–PAB–KLM, 2014 WL 1395954 (D. Colo. Apr.
    10, 2014) .................................................................................................................................13

*Peel v. BrooksAmerica Mortg. Corp.*,
    788 F. Supp. 2d 1149 (C.D. Cal. 2011) .................................................................................25

*Pincus v. Am. Traffic Sols., Inc*,
    986 F.3d 1305 (11th Cir. 2021) .............................................................................................19

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
    842 So.2d 773 (Fla. 2003)......................................................................................................16

*Purzel Video GmbH v. Smoak*,
    11 F. Supp. 3d 1020 (D. Colo. 2014).......................................................................................7

*Quiroz v. Sabatino Truffles New York, LLC*,
    2017 WL 8223648 (C.D. Cal. Sept. 18, 2017) ......................................................................24

*Rilley v. MoneyMutual*,
    LLC, No. 16-cv-4001, 2018 WL 6920764 (D. Minn. Dec. 13, 2018)....................................27

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. Dist. Ct. App. 2006) ............................................................................12

*Salzman v. Bachrach*,
  996 P.2d 1263 (Colo. 2000) ...................................................................................19

*Scarlett v. Air Methods Corp.*,
  No. 16-CV-02723-RBJ, 2020 WL 2306853 (D. Colo. May 8, 2020) ....................................10

*Scarpaci v. Lowe's Home Ctr., LLC*,
  212 F. Supp. 3d 246 (D. Mass. 2016) ......................................................................19

*Scott v. Honeywell Int'l, Inc.*,
  No. 14-cv-00157-PAB-MJW, 2015 WL 1517527 (D. Colo. Mar. 30, 2015).........................23

*Siegal v. GEICO Cas. Co.*,
  523 F. Supp. 3d 1032 (N.D. Ill. 2021) ....................................................................11

*Simon v. Coppola*,
  876 P.2d 10 (Colo.App. 1993) .................................................................................23

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ................................................................................................10

*Smith v. Pizza Hut, Inc.*,
  No. 09–cv–01632–CMA–BNB, 2011 WL 2791331 (D. Colo. July 14, 2011) ......................10

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ..................................................................................19

*Sonneveldt v. Mazda Motor of Am., Inc.*,
  No. 819CV01298JLSKES, 2021 WL 62502 (C.D. Cal. Jan. 4, 2021) .................................25

*Strizich v. Mountain States Tel. & Tel. Co.*,
  No. CIV. A. 90-F-1660, 1990 WL 303164 (D. Colo. Oct. 24, 1990)...................................27

*Thomas v. Generac Power Sys. Inc.*,
  2022 WL 4091735 (11th Cir. Sept. 7, 2022) .............................................................27

*Tiara Condo. Ass'n v. Marsh & McLennan Cos.*,
  110 So. 3d 399 (Fla. 2013).......................................................................................24

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).................................................................................................8

*U.S. v. Rodriguez-Aguirre*,
  264 F.3d 1195 (10th Cir. 2001) ................................................................................6

*Valiente v. Unilever United States, Inc.*,
No. 22-21507, 2022 WL 18587887 (S.D. Fla. Dec. 8, 2022)...................................24

*Wallace v. ConAgra Foods, Inc.*,
747 F.3d 1025 (8th Cir. 2014) ..............................................................................8

*Warth v. Seldin*,
422 U.S. 490 (1976)............................................................................................10

*Waters v. Mitchell*,
600 F. Supp. 3d 1177 (W.D. Wash. 2022).............................................................28

*Wilson v. Colourpop Cosmetics, LLC*,
No. 22-cv-05198-TLT, 2023 WL 6787986 (N.D. Cal. Sep. 7, 2023) ...............14, 17

*Zlotnick v. Premier Sales Grp.*,
480 F.3d 1281 (11th Cir. 2007) ...........................................................................12

**Statutes**

21 U.S.C. § 321(g) .........................................................................................2, 13

21 U.S.C. §§ 331(d) .............................................................................................13

21 U.S.C. § 355.................................................................................................3, 13

California Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750 et
seq. ................................................................................................6, 12, 17, 20, 27

California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et
seq. ..........................................................................................................6, 12, 17

California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et
seq. ...................................................................................................6, 12, 17, 20

Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 et seq........................ *passim*

Florida Deceptive Unfair Trade Practices Act ("FDUTPA"), Florida Statute
§§ 501.201, et seq. .......................................................................6, 11, 17, 27

**Other Authorities**

21 C.F.R. 200.50(b)(1).............................................................................................5

21 C.F.R. §§ 211.113(b), 211.160(b), 211.194(a). 211.22(a).....................................13

## I.        INTRODUCTION

Defendant Similasan Corp. respectfully moves to dismiss this putative nationwide consumer class action commenced by Plaintiffs immediately after the U.S. Food and Drug Administration ("FDA" or "Agency") issued a Warning Letter related to Defendant's homeopathic eye drop products (the "Product" or "Products"). As shown in the operative Complaint (ECF 32), Plaintiffs attempt to act as private enforcers of the Federal Food, Drug and Cosmetic Act ("FDCA") by converting the language of the Agency's Warning Letter into a hodgepodge of claims allegedly on behalf of a putative nationwide class and Florida and California subclasses. Plaintiffs claim that they would not have purchased Similasan's Products or would have paid less had they known that the Products allegedly: (1) are "unapproved drugs" and "illegal to sell"; (2) are labeled as "sterile" but were not manufactured in accordance with the FDA's Current Good Manufacturing Practice ("CGMP") regulations; and (3) contain a preservative (silver sulfate) that could potentially be harmful. As explained below, none of these allegations suffice to state a claim as a matter of law.

Similasan has been distributing—and at least Plaintiff David Plowden has been buying— its homeopathic eye drop Products for "years." These Products are well-known to consumers, and appropriately marked as homeopathic products whose claims have not been evaluated by the FDA. Tellingly, Plaintiffs do not allege (or even imply) that they or any absent, putative class member encountered any issues with the Products' effectiveness, safety, quality or usefulness. Indeed, nowhere in their lengthy Complaint do plaintiffs acknowledge that the Products' labels prominently disclose in bold that the FDA has not evaluated their safety or effectiveness: "**Claims based on traditional homeopathic practice, not accepted medical evidence. Not FDA evaluated**."  Based upon the Products' packaging and the Complaint itself, it is clear that all three

Plaintiffs received exactly what they paid for: a homeopathic product intended to relieve minor eye symptoms.

Unable to allege that the Products they purchased were deficient or misrepresented in any manner, Plaintiffs instead attempt to convert the FDA's statements in the Warning Letter into a state law claim. Plaintiffs' attempt is legally and factually deficient for several independent reasons. Plaintiffs fail to allege they suffered a concrete, particularized injury sufficient to confer Article III standing—they received the Products they were promised. And even if Plaintiffs had standing (they do not), they fail to plausibly allege that reasonable consumers would be deceived by the Products' accurate labeling, a key element in each of their asserted claims. The Complaint also fails to state a claim for the additional reasons explained below. Similasan therefore respectfully requests that the Court dismiss the Complaint with prejudice.

## II.      FACTUAL BACKGROUND

### A.      Regulatory Framework for Homeopathic Drugs

Homeopathy is a well-established practice of medicine that originated over 200 years ago. It is based on the principle that an ailing individual's symptoms can be alleviated by small doses of a substance that causes similar symptoms in healthy people. Because homeopathic drugs are typically made from natural sources, they have wide appeal as an alternative to the conventional "allopathic" drugs in Western medicine.

As part of the comprehensive regulatory regime codified as the FDCA, Congress conferred authority upon FDA to regulate homeopathic remedies as drug products.[1] The Agency, however,

---

[1] *See* 21 U.S.C. § 321(g) (the definition of "drug," which incorporates "articles recognized in the … official Homoeopathic Pharmacopoeia of the United States").

has not yet approved any homeopathic drugs under its "new drug" approval authority (codified at 21 U.S.C. § 355). Instead, FDA has exercised its broad enforcement discretion to allow homeopathic drugs to be marketed in the U.S. without FDA evaluation or preapproval, subject to FDA taking enforcement action. *See MediNatura, Inc. v. Food & Drug Admin.*, 998 F.3d 931, 935 (D.C. Cir. 2021). Homeopathic drugs, moreover, are subject to the same FDCA rules as allopathic drugs with respect to manufacturing, packaging, and distribution, among other FDCA-derived regulatory requirements. Pursuant to its authority, FDA routinely issues inspection reports, warning letters, and import alerts to both allopathic and homeopathic manufacturers and sellers. The FDA also takes enforcement action against both allopathic and homeopathic manufacturers for misbranding, or requests a market recall if a product is deemed to be harmful or contaminated. *See id.* at 936; *Meserey v. U.S.A.*, 447 F. Supp. 548, 552-53 (D. Nev. 1977). The FDA, in short, regulates homeopathic product manufacturers and distributors (as well as retailers that offer over-the-counter products for sale to consumers) and has done so for years.

**B.      Allegations of Plaintiffs' Complaint**

Defendant Similasan distributes homeopathic eye drops intended to relieve a variety of "minor eye symptoms." ECF 32 ("Compl.") ¶¶1, 19, 23. The front label for each Product describes it as **"Homeopathic"** with **"Natural Active Ingredients."** Compl. ¶27 (images of Product labels). Each of the Products' back label prominently discloses in red, bold ink: **"Claims based on traditional homeopathic practice, not accepted medical evidence. Not FDA evaluated."** *Id.* The Complaint never once acknowledges in its 45 pages these bolded affirmative disclosure statements. The labels further indicate that the "Uses" described for each Product on the package

are "[a]ccording to homeopathic principles." *Id.* And under a list of "inactive ingredients," each Product packaging lists "silver sulfate (as preservative)." *See, e.g.*, *id.* ¶54.

The allegations of all three Plaintiffs against Similasan are nearly identical. Plaintiff Plowden, a Florida resident, alleges that he "purchased Defendant's Similasan Red Eye Relief Product for his personal use for years on various occasions," with his most recent purchase on August 31, 2023. Compl. ¶14, 63-64. Plaintiff Ortega and Vinluan-Jularbal, California residents, allege single purchases of a Product at a California Walmart location on October 22, 2022, and August 31, 2023, respectively. *Id.* ¶¶16, 18, 69, 75. Each Plaintiff allegedly saw and relied on Similasan's statements that their respective Product was: (1) "sterile," *id.* ¶¶66, 72, 78; and (2) "a homeopathic drug," able to relieve minor eye symptoms, *id.* ¶14, 16, 18—although each Product label uses only the stand-alone term "Homeopathic," *see id.* ¶27. Each Plaintiff apparently further relied on Defendant's "position as a maker of eye products." *Id.* ¶¶65, 71, 77.

From these identical allegations, each Plaintiff alleges the same three theories of injury. *See id.* ¶2, 14, 16, 18. *First*, that the Products are "unapproved drugs" and "illegal to sell." *Id.* *Second*, that the Products are labeled "sterile," but were not manufactured in accordance with the FDA's CGMP regulations and therefore could not have been sterile. *Id.* And *third*, that the Products contain a preservative (silver sulfate) that could potentially be harmful. *Id.* Had they known each of these purported undisclosed "facts," Plaintiffs allege they would not have purchased the Product or would have paid less. *Id.* ¶¶65-67, 71-73, 77-79.

These allegations are insufficient to state a cause of action under any of the state laws they rely upon. Plaintiffs do not allege—nor could they—that the Products they purchased were actually not sterile or that they were somehow harmed by the use of silver sulfate as a preservative. Nor

can Plaintiffs' plausibly allege—in the face of the clear and unambiguous language on the Products' labels—that they believed they were purchasing a drug approved by the FDA. Unable to make any such allegations, Plaintiffs' theories of injury attempt to convert the language of the Warning Letter to Similasan ("the Warning Letter") into a private right of action.[2] But that Warning Letter does not change the quality and character of the Products purchased by Plaintiffs.

In its letter, the Agency, in a non-final agency action[3], asserted that the Company's homeopathic ophthalmic products (which have been continuously marketed in the U.S. for over thirty years) are "unapproved new drugs" that can now only be sold if they are first approved by the FDA. Warning Letter; *see also* Compl. ¶¶33-39. The Agency further alleged that, based upon certain claimed CGMP findings, Similasan's Products are "adulterated" within the meaning of the FDCA because of what FDA inspectors observed at Similasan's manufacturing facility. Warning Letter; *see also* Compl. ¶¶40-42. FDA also voiced, without citing any supporting data, its "significant concerns regarding the safety of silver sulfate for use as an ophthalmic preservative," which the Agency indicated is "inconsistent with 21 C.F.R. 200.50(b)(1)," a rule requiring antimicrobial substances in ophthalmic drug products (including preservatives) to be "suitable and harmless." Warning Letter; *see also* Compl. ¶¶54-55.[4] Similasan, obviously, must contend with

---

[2] *See* FDA, *Warning Letter to Similasan AG* (Sept. 11, 2023), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/similasan-ag-658878-09112023 (the "Warning Letter"). Because the Warning Letter "is referenced in the complaint and is central to the plaintiff[s'] claim," the Court may properly consider it on a motion to dismiss. *Lorusso v. Boulder Brands, Inc.*, No. 15-CV-00679-MSK-KMT, 2017 WL 4334070, at *1 (D. Colo. Feb. 27, 2017).

[3] An FDA warning letter does not represent final agency action, does not mark the consummation of the Agency's decision-making process, and does not determine any legal rights or obligations. *See Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012).

[4] Notably, Plaintiffs neither allege that FDA discovered any non-sterile Products sold by Similasan nor that FDA issued any form of "safety alert" for consumers regarding the likelihood of injury from the use of the Products.

the Agency's claims, but the statements in that Warning Letter are not evidence that Plaintiffs have been harmed. To reiterate, none of the Plaintiffs alleges any issues whatsoever with the quality, usefulness, or safety of the Products that they purchased (and in Plowden's case, purchased for "years"). *See id.* ¶¶14, 16, 18. Each Plaintiff received exactly what they paid for at the time of their purchase: a homeopathic product intended to relieve minor eye symptoms.

The settled law does not permit Plaintiffs to transform the Warning Letter into individual claims or putative nationwide class claims (with various multi-state, California and Florida subclasses) for: (1) Violation of State Consumer Protection Statutes ("State Consumer Protection Claim"); (2) Unjust Enrichment/Quasi-Contract; (3) Breach of Implied Warranties; (4) Breach of Express Warranty; (5) Fraudulent Omission; (6) Violation of Florida Statute §§ 501.201, et seq. ("FDUTPA"); (7) Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; (8) Violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750 et seq.; and (9) Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500. *See* Compl. ¶¶110-225.

## III.   LEGAL STANDARDS

Defendant moves to dismiss the Complaint for lack of Article III standing (Rule 12(b)(1)) and failure to state a claim (Rule 12(b)(6)). It is Plaintiffs' burden to establish each element of standing necessary to confer subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992); *U.S. v. Rodriguez-Aguirre*, 264 F.3d 1195, 1202 n.5 (10th Cir. 2001). "'[T]hreadbare recitals of the elements[, which are] supported by mere conclusory statements'" do not suffice to establish Article III standing at the pleading stage. *COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215, 1221 (10th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* at 678. In examining a complaint under Rule 12(b)(6), the court should "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). This is especially true where, as here, Plaintiffs seek to bring a "potentially massive . . . controversy" through nationwide class action litigation. *Twombly*, 550 U.S. at 558.

Defendant also moves under Rule 12(f) to strike Plaintiffs' request for punitive damages. Whether to strike a portion of a pleading is within the court's discretion. *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1029–31 (D. Colo. 2014).

## IV.   ARGUMENT

### A.   THE COMPLAINT MUST BE DISMISSED FOR LACK OF STANDING (RULE 12(b)(1))

#### 1.   Plaintiffs Lack Article III Standing

Plaintiffs cannot meet their burden of establishing standing because they have not suffered an injury in fact— that is, an invasion of a legally protected interest that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560-61.

First, Plaintiffs' three theories of injury—that they "would not have purchased the Product" had they known about its FDA approval status, alleged CGMP violations at the manufacturing facility, and use of silver sulfate—are neither plausible nor well-pled. *See* Compl. ¶¶14, 16, 18.

Plaintiffs, who otherwise have carefully mined each Product's label, completely ignored the statement that: "**Claims based on traditional homeopathic practice, not accepted medical evidence. <u>Not FDA evaluated</u>.**" *Id.* ¶27 (emphasis added). It is not plausible that Plaintiffs never noticed this explicit and prominently marked disclosure; further, a reasonable consumer is presumed to review a product's label. *See, e.g.*, *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 676 (E.D.N.Y. 2017).

Further, as Plaintiffs admit, the labels plainly disclose the use of silver sulfate as a preservative. None of the Plaintiffs allege any issues with the quality, usefulness, or safety of the "Not FDA evaluated" Products that they purchased (in Plowden's case, for "years"). *See id.* ¶¶14, 16, 18. Possible, speculative future harm is not sufficient to allege present injury. *See, e.g.*, *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 708 (9th Cir. 2020) (affirming dismissal of claims where plaintiff alleged range of *potential* harms from consuming trans fats but failed to "plausibly allege[] that she suffered these injuries"). Although Plaintiffs speculate that a given Product *might* be non-sterile due to alleged CGMP compliance issues, or that silver sulfate *might* cause harm, no Plaintiff alleges any concrete and particularized harm resulting from the Product they purchased, and "[o]nly those plaintiffs who have been concretely harmed by a defendant's [alleged regulatory] violation" have standing to pursue a claim in federal court. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021); *see also Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) ("In the context of defective products. . . the plaintiffs must allege that *their* product *actually exhibited* the alleged defect."); *Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08–04741 WHA, 2009 WL 1082026, *4 (N.D. Cal. Mar. 29, 2009) ("That the [product] was adulterated due to lack of compliance with GMP requirements is not enough, without more, to state a claim.").

Second, Plaintiffs' theory that they paid a "price premium" for the Products also lacks factual support. *Id.* ¶¶14, 16, 18. Plaintiffs fail to identify any "less expensive" comparable homeopathic product sold on the market to support the allegation that Defendant "extract[s] price premiums" for the Products. *Id.* ¶¶85, 115. Indeed, presumably Plaintiffs have not identified a comparable homeopathic product on the market that meets their subjective expectations because there are currently no homeopathic drug products that are approved by FDA. The Complaint fails to demonstrate how Plaintiffs lost any money or suffered any injury given that they received exactly what the label promised. *See Blackburn v. Etsy, Inc.*, No. 23-5711, 2023 WL 9105662, at *4 (C.D. Cal. Oct. 12, 2023) (agreeing with numerous courts concluding that "conclusory allegation of a price premium, without supporting well-pleaded facts, fails to satisfactorily allege standing under the applicable federal pleading standard").

Because Plaintiffs have not suffered an injury in fact, the Complaint must be dismissed for lack of Article III standing. *See Frank v. Gaos,* 139 S.Ct. 1041, 1046 (2019) ("[F]ederal courts lack jurisdiction [over the putative class] if no named plaintiff has standing.").

### 2.       Plaintiffs Lack Standing to Bring Claims Based on Products They Never Purchased

Plaintiffs collectively purchased only three of Defendant's Products: "Similasan Red Eye Relief Product," "Stye Eye Relief Product" and "Pink Eye Relief Product," Compl. ¶¶14, 16, 18, but the Complaint impermissibly attempts to encompass all twelve of Defendant's Products mentioned in the FDA's Warning Letter, Compl. ¶1. Plaintiffs, however, "lack standing to assert claims regarding products [they] did not purchase." *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 304 F.R.D. 601, 613 (D. Colo. 2015) (collecting cases). Plaintiffs' claims premised on the nine Products they never purchased should be dismissed.

### 3.      Plaintiffs Lack Standing to Bring Nationwide and "Multi-State" Consumer Protection Classes

Plaintiffs, who collectively are Florida and California citizens, and who allegedly purchased the Products only in those two states, lack statutory standing to bring claims under the consumer protection statutes of any other state. As Courts in this District and elsewhere have concluded, a "Plaintiff lacks standing to bring claims under state laws to which Plaintiff has never been subjected." *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632–CMA–BNB, 2011 WL 2791331, at *8, *10 (D. Colo. July 14, 2011); *Beltran v. InterExchange, Inc.*, No. 14-CV-03074-CMA-CBS, 2018 WL 1948687, at *6 (D. Colo. Feb. 2, 2018) ("named plaintiffs lack standing to bring claims under the laws of states where the named plaintiffs have not worked or resided"). The fact that a putative member of the proposed class(es) may have standing under another state's statute does not bestow standing to proceed upon any of the named Plaintiffs here who are foreign to that state. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent," quoting *Warth v. Seldin*, 422 U.S. 490, 507 (1976).).

Plaintiffs' claims for a "nationwide" or "multi-state" class cannot survive for the additional reason that variations in statutes (including those characterized by Plaintiffs in Footnote 9 of their Complaint as "states with similar consumer fraud laws") would defeat Rule 23's commonality, predominance, and superiority requirements. *See Scarlett v. Air Methods Corp.*, No. 16-CV-02723-RBJ, 2020 WL 2306853, at *11 (D. Colo. May 8, 2020) (striking nationwide class allegations at the pleading stage where "each class member's claim w[ould] need to be resolved

under the applicable state law's choice of law rules governing express and implied-in-fact contract formation").

Accordingly, to the extent Plaintiffs' claims are predicated on state laws other than those of California or Florida, they should be dismissed.

**B.      THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A VIABLE CAUSE OF ACTION (RULE 12(b)(6))**

**1.      The Heightened Pleading Standard of Rule 9(b) Applies**

"Claims sounding in fraud must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Mishkin v. Zynex Inc.*, No. 09-CV-00780-REB-KLM, 2011 WL 1158715, at *1 (D. Colo. Mar. 30, 2011). Plaintiffs' claims here are no exception. They rely on the same three theories of wrongdoing with respect to allegedly false or misleading disclosures and accordingly, Plaintiffs must meet Rule 9's heightened pleading standard. *See, e.g.*, *DJ Lincoln Enters., Inc. v. Google LLC*, No. 21-12894, 2022 WL 203365, at *3 (11th Cir. Jan. 24, 2022) (applying Rule 9(b) to a FDUTPA claim); *Francis v. Mead Johnson & Co.*, Civ. Action No. 1:10–cv–00701–JLK, 2010 WL 5313540, at *3 (D. Colo. Dec. 17, 2010) (applying Rule 9(b) to an unjust enrichment claim).[5]

---

[5] Each of the "other statutes with similar consumer fraud laws" identified in Footnote 9 of the Complaint are also subject to the heightened pleading standard of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (Cal. Bus. & Prof. Code § 17200 ("CA UCL") claim); *Siegal v. GEICO Cas. Co.*, 523 F. Supp. 3d 1032, 1041 (N.D. Ill. 2021) (815 Ill. Comp. Stat. Ann. 505/l ("ICFA") claim); *Martin v. Mead Johnson Nutrition Co.*, No. 09-cv-11609, 2010 WL 3928707, at *4 (D. Mass. Sept. 30, 2010) (Mass. Gen. Laws Ann. Ch. 93A, § 1 ("Mass. CPA") claim); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011) (Mich. Comp. Laws §§ 445.901 ("Mich. CPA") claim); *Ansari v. NCS Pearson, Inc.*, No. CIV 08-5351(JRT/JJG), 2009 WL 2337137, at *8 (D. Minn. July 23, 2009) (Minn. Stat. Ann. § 325F.67 ("Minn. FSAA") claim); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (N.J. Stat. Ann. § 56:8-1 ("NJCFA") claim); *George v. Jaguar Land Rover N. Am. LLC*, No. 2:20-CV-17561 (WJM), 2021 WL 5195788, at *10 (D.N.J. Nov. 8, 2021) (N.Y. Gen. Bus. Law § 349 ("NYCPA") claim); *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020) (Wash. Rev. Code Ann. § 19.86.010 ("Wash. CPA") claim).

Rule 9(b), in turn, requires Plaintiffs to "state with particularity the circumstances constituting [the alleged] fraud." Fed. R. Civ. P. 9(b). This "requires a complaint alleging fraud to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation and internal quotation marks omitted).

### 2.    Plaintiffs Fail to Allege a Viable Consumer Claim

Collectively, the specific consumer claims advanced by Plaintiffs under Florida and California law depend upon the existence of a deceptive act or practice (*see* Compl. ¶¶170-225; Counts I, VI-IX). Plaintiffs allege that their amorphous "Multi-State" consumer claims do as well. *See* Compl. ¶¶111-117. In addition, for such claims, Plaintiffs must allege causation and damages. *See, e.g.*, *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006); *see* Compl. ¶¶118-120.

### a.    Plaintiffs have not alleged a deceptive or unfair practice

Under both Florida and California law, the reasonable consumer standard applies: "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (internal quotation marks omitted). "This standard requires a showing of probable, not possible, deception that is likely to cause injury to a reasonable relying consumer." *Id.* (internal quotation marks omitted); *see McGinity v. The Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (holding that "claims under the UCL, FAL, and CLRA are governed by the 'reasonable consumer' standard," which "requires a probability that a significant portion of the general consuming public or of targeted consumers,

acting reasonably in the circumstances, could be misled") (internal quotation marks omitted). This is an "objective test." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016).

*First*, to the extent Plaintiffs rely on conduct being unlawful under the FDCA or state equivalents to state a claim, implied preemption stands in the way. "[T]he FDCA leaves no doubt that it is the Federal Government rather than private litigants who [is] authorized to file suit for noncompliance with [its substantive] provisions." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001). And, "because no private right of action exists under the FDCA, a plaintiff may not use [other statutes] as an alternative vehicle by which to seek redress for an FDCA violation." *OraLabs, Inc. v. Kind Grp. LLC*, Civ. Action No. 13-cv-00170-PAB-KLM, 2014 WL 1395954, at *3 (D. Colo. Apr. 10, 2014). Accordingly, "the FDCA preempts any state tort claim that exists solely by virtue of an FDCA violation." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1279 (10th Cir. 2021) (quoting *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1339 (10th Cir. 2015)).

Plaintiffs' claims are preempted to the extent they rely on alleged representations or omissions about the Product's FDA-approval status, CGMP manufacturing and the propriety of using silver sulfate; the critical predicate for the falsity of all of these claims is Similasan's alleged violations of the FDCA. *See* Compl. ¶¶38, 44 (alleging Defendant sold "unapproved new drugs" that are "illegal both under federal and state law," relying on 21 U.S.C. §§ 321(g)(1)(B), 331(d), 355(a)); ¶¶40, 44 (alleging Products are "adulterated" because Defendant's "contract manufacturer [] did not follow CGMPs," relying on 21 C.F.R. §§ 211.113(b), 211.160(b), 211.194(a). 211.22(a) & (d)); ¶55 (alleging Products are "defective" because "the use of silver sulfate violates 21 C.F.R. [§] 200.50(b)(1), which requires that preservatives for eye products be 'safe and harmless'").

13

These allegations, moreover, mirror the FDA's Warning Letter to Similasan. Plaintiffs are in essence asking the Court (or jury) to determine, before FDA makes a final decision, whether the Products could be marketed permissibly under the FDCA's comprehensive regulatory scheme, which implied preemption does not permit. *See, e.g.*, *Wilson v. Colourpop Cosmetics, LLC*, No. 22-cv-05198-TLT, 2023 WL 6787986, at *7-8 (N.D. Cal. Sep. 7, 2023) (plaintiff sought to "enforce the FDCA" against defendant for inclusion in cosmetics of alleged harmful ingredients not approved by the FDA for use near the eyes; court concluded plaintiff's claims that "ar[ose] from alleged violations of the FDCA" were impliedly preempted).[6]

**Second**, Plaintiffs fail to allege a plausible consumer claim, *i.e.*, that "a significant portion of the general consuming public" would be misled based on representations on the Products' labels. *McGinity*, 69 F.4th at 1097. The complete packaging for the Products makes this clear. Initially, Plaintiffs allege they relied on the description of the Products as "Homeopathic" and the statement on the back labels that they could "relieve minor [eye] symptoms," which led them to believe the Products were FDA approved. *See* Compl. ¶14, 16, 18. Contrary to Plaintiffs' theory of liability, however, nothing about these representations conveyed to a reasonable purchaser that the Products were "[]approved by the FDA." *See id.* In fact, the back label expressly disclaimed *any* FDA evaluation of any of Defendant's Products. Plaintiffs' unreasonable expectations about the FDA approval status of the Products, untethered from the Products' labeling, cannot support a consumer claim.

---

[6] Indeed, allowing Plaintiffs to bring this claim based on the FDA's Warning Letter would be tantamount to inviting the conversion of each of the over 500 Form-483 inspection (CGMP) observations and 170 warning letters issued last year by the FDA into putative consumer class actions, which would run contrary to the purpose of FDA issuing such communications and industry participants responding with corrective actions. *See* FDA, Office of Compliance, *Annual Report Fiscal Year 2023* (Jan. 2024), https://www.fda.gov/media/175379/download?attachment.

Plaintiffs further challenge the "sterile" representation on the Products and contend this was false because the Products were "adulterated," meaning "not manufactured in conformance with CGMPs." Compl. ¶¶14, 16, 18, 66, 72, 78. Like nearly all allopathic and homeopathic products, there are no representations on the Products' labels about conformance with CGMP regulations. Nothing in the Complaint, moreover, plausibly demonstrates that Similasan's Products were misrepresented as "sterile"; there are no allegations that any Product purchased by any Plaintiff was contaminated or non-sterile. At most, Plaintiffs allege—relying solely on the Warning Letter—that FDA's inspectional findings at the manufacturing facility show the Products were "made in manufacturing conditions that risked contamination." *See* Compl. ¶66. Alleging there was a "risk" of contamination does not demonstrate that a reasonable consumer would be misled by a "sterile" representation or that the "sterile" representation was false. There is a risk of contamination with any sterile product, homeopathic or otherwise, and Plaintiffs allege no facts showing that the Products they or any other consumer purchased were not, in fact, "sterile."

*Third*, the Complaint does not state a claim based on an alleged omission by Defendant. Nothing, of course, was omitted about the "Not FDA evaluated" status of the Products for reasons that are obvious. As courts recognize, "[t]here can be no claim for deceptive acts or practices . . . when the alleged deceptive practice was fully disclosed." *See Millennium Health, LLC v. EmblemHealth, Inc.*, 240 F. Supp. 3d 276, 286 (S.D.N.Y. 2017) (citation and internal quotation marks omitted). There was nothing, in other words, for Similasan to add to the disclosure already on the label about the "Not FDA Evaluated" Products.

And, with respect to the use of silver sulfate, there is no question that it was disclosed as an ingredient on the Products' labels.  The FDA claim, made in a footnote to the September 2023

Warning Letter, that it has "significant concerns" about the use of silver sulfate as a preservative does not mean that this preservative actually causes harm as used in the Products. Plaintiffs allege no facts plausibly supporting their conclusions that (1) silver sulfate cannot be used safely as a preservative in eye drops; and (2) that reasonable consumers were misled about the Products in the absence of some sort of warning about silver sulfate's potential for harm. Based on the allegations in the Complaint, Similasan's disclosure of silver sulfate on the Products' labels was truthful and appropriate, and there is no allegation that silver sulfate actually caused harm to any consumer.

*Finally*, the Complaint does not allege any "unfair" conduct by Defendant. "[A]n unfair practice ... is one that offends established public policy and ... is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hetrick v. Ideal Image Dev. Corp.*, 372 Fed.Appx. 985, 992 (11th Cir. 2010) (per curiam) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003)). Plaintiffs have not alleged any unfair conduct nor can it be immoral, unethical, oppressive, unscrupulous, or substantially injurious or in violation of established public policy for Defendant to unambiguously disclose directly on the label that its "homeopathic" Products are "based on traditional homeopathic practice, not accepted medical evidence" and "[n]ot FDA evaluated." Compl. ¶27.

### b.      Plaintiffs have not alleged actual damages

Plaintiffs also cannot state a cause of action without pleading facts to support they suffered actual damages. *See Macias v. HBC of Florida, Inc.*, 694 So. 2d 88, 90 (Fla. Dist. Ct. App. 1997) (holding that plaintiff failed to state a cause of action under FDUTPA as she suffered no actual damages and affirming dismissal of complaint with prejudice); *see also Wilson*, 2023

WL 6787986, at *6 (statutory standing under the CLRA and FAL require plaintiffs to "show economic injury"; UCL similarly requires plaintiffs to allege "both an injury in fact and that they have lost money or property as a result of the unfair competition"). The FDUTPA and similar state laws "do[] not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008) (citation and internal quotation marks omitted).

For the same reasons discussed previously with respect to Plaintiffs' lack of an injury for purposes of Article III standing (*see supra* at pp. 7-9), Plaintiffs fail to plausibly allege an actual injury for purposes of asserting a statutory consumer claim. Plaintiffs received exactly what they were promised on the Products' labels: an ophthalmic product that, "according to homeopathic principles," could provide temporary relief for minor eye ailments. Plaintiffs make no allegation that the Products were ineffective—and Plaintiff Plowden allegedly purchased a Product on various occasions over a period of "years" without complaint. Nor can Plaintiffs claim injury from the alleged undisclosed "risk" that the Products were not sterile or otherwise unsafe, in the absence of any allegation of concrete, non-speculative harm befalling any Plaintiff (or even any absent putative class member). The Plaintiffs "ha[ve] neither plausibly alleged that [they] suffered any injuries the [alleged defects] can cause, nor [have they] shown there is a high probability, or any for that matter, that injury will imminently occur in the future." *Wilson*, 2023 WL 6787986, at *5; *see id.* (rejecting plaintiffs' speculative theory of injury on motion to dismiss); *Myers-Armstrong*, 2009 WL 1082026, at *4 (reasoning that after obtaining a product's "beneficial effect with no downside," a consumer cannot seek damages because the product "came from a source of uncertain

quality"). Plaintiffs have, moreover, failed to plausibly allege facts supporting that they paid a price premium as compared to other homeopathic products, for reasons discussed previously.

In the absence of plausible allegations that any of the Plaintiffs was injured, their consumer claims must be dismissed.

### 3. Plaintiffs' Claim for Violation of Other State Consumer Protection Statutes Is Insufficiently Pled

Plaintiffs' first claim—"Violation of State Consumer Protection Statutes"—summarily invokes consumer protection statutes of at least eight states, in a footnote, without attempting to allege the elements of each claim. *See* Compl. ¶111 (incorrectly citing to Footnote 3 as opposed to Footnote 9). As a result, Similasan is left to guess as to how it allegedly violated a merely illustrative list of eight states' consumer fraud statutes. Rule 8 requires the Plaintiffs to do more than non-specifically allege additional "similar" state consumer fraud statutes to state a claim under a particular state's laws. This vague and incomplete claim relying on "state consumer protection statutes" broadly should be dismissed in its entirety. *See Lemberg v. Tuuk*, No. 06 CV 00259-MSK-MEH, 2006 WL 446090, at *1 (D. Colo. Feb. 21, 2006) ("Rule 8(a) . . . requires minimal factual allegations on the material elements that must be proven to recover on each of the Plaintiff's claims.").

### 4. Plaintiffs are not entitled to equitable relief because they have an adequate remedy at law

To the extent Plaintiffs seek equitable relief under the consumer protection statutes of California, Massachusetts, Michigan, Minnesota, New Jersey, or New York, such a relief is barred because Plaintiffs have an adequate remedy at law. *See e.g.,* Compl. ¶¶121-128 (Count II). The Complaint expressly seeks legal remedies in the form of compensatory, punitive, and special

damages. Thus, equitable relief is unavailable for Plaintiffs' consumer protection claims brought under California, Massachusetts, Michigan, Minnesota, New Jersey, and New York law, as courts applying the law of these jurisdictions have held.[7]

### 5.    Plaintiffs Fail to Allege Facts Sufficient to State a Claim for Unjust Enrichment/Quasi-Contract

Even assuming Plaintiffs could proceed with an equitable claim for unjust enrichment, they must allege that Defendant received a benefit at Plaintiffs' expense and that it would be unjust for Defendant to retain the benefit. *Salzman v. Bachrach*, 996 P.2d 1263, 1266 (Colo. 2000); *see also MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017); *Pincus v. Am. Traffic Sols., Inc*, 986 F.3d 1305, 1311, 1311 n.8 (11th Cir. 2021).[8] The Complaint, however, fails to plead the required elements of an unjust enrichment claim.

Plaintiffs allege that Defendant "knowingly realize[d] substantial revenues from selling the Products at the expense of, and to the detriment of, Plaintiffs and the Nationwide Class Members, and to Defendant's benefit and enrichment." Compl. ¶125. According to Plaintiffs, "it is inequitable for Defendant to retain the benefits conferred by Plaintiffs' and Nationwide Class Members' overpayment" for the Products. *Id.* ¶127. However, Plaintiffs fail to allege *how* it would be unjust for Defendant to retain payment for the Products purchased where Plaintiffs and the putative class members received the exact Products purchased, for reasons discussed previously

---

[7] *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (CA); *Inorio v. Wells Fargo Bank, N.A.*, 522 F. Supp. 3d 417, 425 (N.D. Ill. 2021) (IL); *Scarpaci v. Lowe's Home Ctr., LLC*, 212 F. Supp. 3d 246, 253 (D. Mass. 2016) (MA); *Bossart v. Gen. Motors LLC*, 2021 WL 5278191, at *9 (E.D. Mich. May 19, 2021) (MI); *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 86 F. Supp. 2d 912, 916 (D. Minn. 2000) (MN); *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 505 (D.N.J. 2006) (NJ); *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 713 F. Supp. 2d 215, 222 (S.D.N.Y. 2010) (NY).

[8] Although unclear from the Complaint, it appears Plaintiffs seek to bring an unjust enrichment/quasi contract claim on behalf of a nationwide class under, at a minimum, Colorado, California and Florida law. *See* Compl. ¶¶122-123.

with respect to the multi-state consumer claim, and they allege no issues with effectiveness or safety in using the Products. Indeed, Plaintiff Plowden concedes that he purchased Defendant's Product "for his personal use for years on various occasions." *Id.* ¶14.  Deciding to allege that one has "buyer's remorse" following publication of an FDA Warning Letter is an insufficient basis to plead a claim for unjust enrichment when Plaintiffs, and the Nationwide Class, already obtained their benefit of the bargain.

Plaintiffs also cannot assert an unjust enrichment/quasi-contract claim that is merely duplicative of their other claims. *See Harris Grp. v. Robinson*, 209 P.3d 1188, 1205–06 (Colo. App. 2009) (finding that, as an equitable remedy, unjust enrichment is not available where there is "a plain, speedy, and adequate remedy at law") (internal quotation marks omitted); *see also Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014) (dismissing quasi-contract claim as duplicative of a plaintiff's statutory claim under the CLRA and UCL); *Francis v. Mead Johnson & Co.*, 2010 WL 5313540, at *9 (D. Colo. Dec. 17, 2010) (dismissing the plaintiff's unjust enrichment claim because the Colorado consumer protection claim "provide[d] an adequate legal remedy"). Plaintiffs' unjust enrichment/quasi-contract claim seeks recovery for the same allegedly wrongful conduct as their other eight claims. *Compare* Compl. ¶¶123-124 (Count II) *with* ¶¶113-118- (Count I); ¶¶135, 142, 146 (Count III); ¶¶155-157 (Count IV); ¶¶164-166 (Count V); ¶¶175-176 (Count VI), ¶¶188-191 (Count VII); ¶¶208-209 (Count VIII); ¶¶220-222 (Count IX). Plaintiffs thus have an adequate remedy at law, and because their unjust enrichment/quasi-contract claim is merely duplicative, the claim (Count II) must be dismissed. *See Edwards v. ZeniMax Media Inc.*, No. 12-CV-00411-WYD-KLM, 2013 WL 5420933, at *10 (D. Colo. Sept.

27, 2013) (unjust enrichment count should be dismissed where it seeks recovery for the same alleged wrongful conduct and damages).

### 6.    Plaintiffs' Breach of Warranty Claims Fail as a Matter of Law.

Plaintiffs assert claims for breach of implied (Count III) and express warranties (Count IV).[9] Specifically, Plaintiffs allege that Similasan expressly warranted that the Products "are 'Eye Drops' for 'Eye Relief'" and "sterile." *Id.*  ¶¶155, 157. Plaintiffs further allege that Similasan impliedly warranted that the Products "were of merchantable quality and were safe for their ordinary use" (Compl. ¶134) and "suitable for their intended purpose" (*id.*  ¶146). Plaintiffs have not alleged sufficient facts to support these claims.

To state a claim for breach of express warranty, a plaintiff must, at minimum, allege a warranty existed. *Fiberglass Component Prod., Inc. v. Reichhold Chems., Inc.*, 983 F. Supp. 948, 953 (D. Colo. 1997). The only express representations Plaintiffs allege are that (1) "[e]ach Product has a statement on the front of the packaging stating that they are 'Eye Drops' for 'Eye Relief'" and (2) "Defendant expressly states on the product packaging that the Products are "STERILE." Compl. ¶¶155, 157. According to Plaintiffs, "Eye Drops" for "Eye Relief" is an "affirmation of fact about the Products (i.e., a representation that the Products are safe for use in the eye as eye drops) and a promise relating to the goods" and "Sterile" is "an affirmation of fact that the Products are sterile, and made in way to ensure sterility." *Id.* ¶¶155, 157. Plaintiffs, however, do not

---

[9] Count III for Breach of Implied Warranties is allegedly brought under the UCC. Compl. ¶¶131, 140. Plaintiffs do not specify what law applies to Count IV for Breach of Express Warranty. *See id.* ¶¶152-161. Similasan contends that Colorado law should apply to the warranty claims, and in any event, Colorado, Florida, and California have all adopted Article 2 of the UCC. *See Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1061 (E.D. Cal. 2022) (several states, including California, Colorado, and Florida have adopted Article 2 of the UCC).

plausibly allege facts supporting an alleged breach of the warranty that the Products are "safe for use in the eye as eye drops" or "sterile." *Id.*

As an initial matter, Plaintiffs fail to identify any express warranty Similasan made that the Products are "safe for use in the eyes as eye drops." Compl. ¶155; *see also Francis v. Mead Johnson & Co.*, No. 1:10-cv-00701-JLK, 2010 WL 5313540, at *7 (D. Colo. Dec. 17, 2010) (express warranty claim failed where "there [was] no such claim on the product's label the defendant "ha[d] not created an express warranty."). That alone defeats their claim. In any event, Plaintiffs allege no issues whatsoever with the actual quality, usefulness, or safety of the Products that they purchased (and instead simply copy the Warning Letter, without which Plaintiffs would be left with no theory of injury or liability at all).

Further, Plaintiffs do not allege—because they cannot—that there was an express warranty that the Products were FDA approved or did not contain silver sulfate. Again, *contrary* information is expressly disclosed on the Products' labeling. *See Haffner v. Stryker Corp.*, No. 14-CV-00186-RBJ, 2014 WL 4821107, at *6 (D. Colo. Sept. 29, 2014) (an express warranty claim failed where the product's labeling "expressly indicated" and warned of adverse effects). Plaintiffs' contradictory allegations must be disregarded. *See, e.g.*, *Forba Holdings, LLC v. Licsac, LLC,* No. 09-cv-02305-CMA-MJW, 2010 WL 148267, at *1 (D. Colo. Jan. 11, 2010) (dismissing express-warranty claim on the grounds it contained only conclusory allegations). Because Plaintiffs fail to identify any breach of an express warranty, their breach of express warranty claim must be dismissed.

Plaintiffs' implied-warranty claims fail for similar reasons. A claim for breach of implied warranties requires, among other things, adequate allegations to show the Products are unfit for

the ordinary purposes for which such goods are used (merchantability) or unsuitable for the purpose warranted (fitness). *Elvig v. Nintendo of America, Inc.*, 2010 WL 3803814, *5 (D.Colo. 2010) (claim for breach of the implied warranty of merchantability requires proof that the alleged defect rendered the product unfit for the ordinary purpose for which it was used); *Simon v. Coppola*, 876 P.2d 10, 15 (Colo.App. 1993) (elements of breach of implied warranty for fitness for a particular purpose includes that "the product was not suitable for the purpose warranted").

Plaintiffs' allegations are again conclusory and must be dismissed. *See Scott v. Honeywell Int'l, Inc.*, No. 14-cv-00157-PAB-MJW, 2015 WL 1517527, at *10 (D. Colo. Mar. 30, 2015) (dismissing claims for breach of merchantability and fitness where "Plaintiff allege[d] no specific facts concerning how the [products] that he purchased failed to satisfy the warranties of merchantability and fitness for a particular purpose"). Plaintiffs allege the Products are "not safe for use as eye drops" solely because "(1) they are unapproved drugs, (2) they are made with faulty and unsafe manufacturing processes, and (3) they contain silver sulfate." Compl. ¶¶135, 146. Plaintiffs have alleged no factual support for the conclusions that the Products are unmerchantable, unsafe, or otherwise unsuitable for their intended purpose. Plaintiffs do not even allege facts illustrating what the ordinary or particular purposes of the Products were, or how the Products did not meet this purpose.

In short, Plaintiffs have failed to state claims for either breach of express warranty or breach of implied warranties and those claims must be dismissed under Fed. R. Civ. P. 12(b)(6).

### 7.      Plaintiffs' Fraudulent Omission Claim Fails

Although unclear from the Complaint, it appears Plaintiffs seek to bring a nationwide fraudulent omission claim based on California and Florida law. Compl. ¶163. For the reasons set forth below, Plaintiffs' fraudulent omission claim fails under both California and Florida law.

### a.      The Economic Loss Rule Bars Plaintiffs' Fraudulent Omission Claim

Plaintiffs' fraudulent omission claim is barred by the economic loss rule. Under this rule, a tort action may be "prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 401 (Fla.  2013) (citation omitted); *see also In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 483 F. Supp. 3d 838, 847 (C.D. Cal. 2020). "Economic loss" includes "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profit—without any claim of personal injury or damage to other property." *Tiara*, 110 So. 3d at 401 (internal quotation marks omitted); *In re Ford Motor Co.,* 483 F. Supp. 3d at 847.

Plaintiffs' fraudulent omission claim seeks to recover for only alleged economic losses; there are no allegations of personal injury or damage to other property resulting from Plaintiffs' purchase of the Product. *See* Compl. ¶¶68, 74, 80 (alleging only Plaintiffs "suffered economic injury"). The claim, moreover, is premised upon nothing more than the alleged misrepresentations on the Product's label. Accordingly, Plaintiffs' fraud claim is barred by the economic loss rule. *Valiente v. Unilever United States, Inc.*, No. 22-21507, 2022 WL 18587887, at *20 (S.D. Fla. Dec. 8, 2022) (finding economic loss rule barred fraud claim based on alleging misleading statements on a product's label where only alleged injury was economic loss); *Quiroz v. Sabatino Truffles New York, LLC*, 2017 WL 8223648, at *6 (C.D. Cal. Sept. 18, 2017) ("[I]n the context of class

action lawsuits involving fraudulent or misleading representations on products, district courts regularly invoke the economic loss doctrine to bar [tort] claims where some form of physical harm is not alleged.").

### b.   Plaintiffs Fail to Plead a Fraudulent Omission Claim

Even if Plaintiffs' fraudulent omission claim were not barred by the economic loss doctrine, Plaintiffs fail to state a claim. "Common law fraudulent omission claims . . .  under Florida, and California law are substantially similar and, in sum, require proof of a (1) material omission, (2) known to be false, (3) made for the purpose of inducing reliance, (4) reliance, and (5) resulting damage." *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 459 (E.D.N.Y. 2022); *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 819CV01298JLSKES, 2021 WL 62502, at *4 (C.D. Cal. Jan. 4, 2021) (analyzing fraudulent omission claims brought under California and Florida law in tandem). A plaintiff must also show that the defendant was under a duty to disclose the allegedly omitted fact. *Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1159 (C.D. Cal. 2011); *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015).[10]

*First*, fraudulent omission claim fails out of the gate, because Plaintiffs' claim depends entirely on the same faulty allegations supporting their consumer class action claims discussed previously. *See* Compl. ¶164 (alleging only that "Defendant made materially misleading omissions concerning the safety of its Products" and incorporating prior allegations). Plaintiffs have not

---

[10] Further, to state a fraudulent omission claim, Plaintiffs must meet the heightened pleading standard under Rule 9(b), which requires Plaintiffs to plead, *inter alia*, "the content of the omission and where the omitted information should or could have been revealed." *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013). Plaintiffs have not met this standard.

plausibly alleged an actionable "misleading omission" by Similasan about the safety of its Products, and therefore Plaintiffs fail to allege any actionable omission of material fact.

*Second*, Plaintiffs have not sufficiently pled a duty to disclose under California or Florida law. Although Plaintiffs include the entirely conclusory allegation that "Defendant had a duty to disclose the defect" and incorporate the remainder of their Complaint by reference (Compl. ¶167), such an allegation does not provide Similasan fair notice of the basis of this alleged "duty." There are specific elements under both California and Florida law that Plaintiffs fail to allege. *See In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1008 (N.D. Cal. 2023) (reciting elements under California law); *Muy v. Int'l Bus. Machines Corp.*, No. 4:19CV14-MW/CAS, 2020 WL 13470560, at *4 (N.D. Fla. Apr. 10, 2020) (same, under Florida law).

*Third*, the fraudulent omission claim fails for the lack of plausible allegations of Plaintiffs' reliance on the alleged omissions. Plaintiffs—one of whom is an alleged repeat purchaser of the Product over many years—do not explain how or when they relied on statements on the Products' label in making purchasing decisions (and do not comply with Rule 9(b)). *See* Compl. ¶¶14, 16, 18 (alleging only that Plaintiffs "saw and relied on Defendants' statements" and listing claims allegedly on the Products' labeling). The Complaint fails to draw the necessary connection between general allegations of wrongdoing (i.e., the FDA's assertions in the Warning Letter) and Plaintiffs' actual purchases or purported damages. *See, e.g.*, *Lawrie v. Ginn Dev. Co.*, No. 3:09-CV-446-J-32JBT, 2014 WL 4788067, at *2 (M.D. Fla. Sept. 19, 2014) (dismissing claims based on "generalized … allegations of wrongdoing against Defendants, without tying those allegations to Plaintiffs' purchases), *aff'd*, 656 F. App'x 464 (11th Cir. 2016).

## C.    PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES MUST BE STRICKEN (RULE 12(f))

Plaintiffs' request for punitive damages in their Multi-State Consumer Protection (Count I), Fraudulent Omission (Count V) and CLRA (Count VIII) claims should be stricken as a matter of law.[11]

First, to the extent Colorado law applies to Plaintiffs' requests, "the inclusion of a claim for punitive damages is prohibited in the initial pleading, and only allowed after the plaintiff establishes *prima facie* proof of a triable issue of exemplary damages." *Cunningham v. Standard Fire Ins. Co.*, 2008 WL 4371929, at *1 (D. Colo. Sept. 23, 2008).

Second, "punitive damages are not available under the FDUTPA." *Thomas v. Generac Power Sys. Inc.*, 2022 WL 4091735, at *3 (11th Cir. Sept. 7, 2022) ("FDUTPA's remedies provision, § 501.211(2), does not mention punitive damages, and we have found no cases allowing such damages for an FDUTPA claim.")

Third, Plaintiffs have not sufficiently pled facts to support a request for punitive damages under the remaining "illustrative" consumer protection statutes they attempt to invoke. Illinois, Massachusetts, Michigan, Minnesota, New Jersey, New York, and Washington all require Plaintiffs to plead sufficient facts to support the inference that punitive damages are available.[12]

---

[11] Courts in this District have construed challenges to punitive damages under both Rule 12(f) and Rule 12(b). *See e.g., Strizich v. Mountain States Tel. & Tel. Co.*, No. CIV. A. 90-F-1660, 1990 WL 303164, at *1 (D. Colo. Oct. 24, 1990) (granting motion to dismiss claim for punitive damages where punitive damages were not permitted under federal statute); *Luciano v. Perez*, No. CIVA06CV01284PSFPAC, 2007 WL 1306476, at *5 (D. Colo. May 3, 2007) (construing a motion to dismiss punitive damages as a motion to strike under Fed. R. Civ. P. 12(f)). Thus, in the alternative, Defendant requests that the Court dismiss Plaintiffs' punitive damages under Rule 12(b).

[12] *Anthony v. Sec. Pac. Fin. Servs., Inc.*, No. 94 C 2026, 1995 WL 88998, at *3 (N.D. Ill. Feb. 24, 1995), (IL); *Marolda v. Tisbury Towing & Transportation Co.*, No. CV 4:19-10496, 2022 WL 13842068, at *2 (D. Mass. Oct. 21, 2022) (MA); *Mourad v. Marathon Pet. Co. LP*, 129 F. Supp.3d 517, 526 (E.D. Mich. Sept. 15, 2015) (MI); *Rilley v. MoneyMutual*, LLC, No. 16-cv-4001, 2018 WL 6920764, at *3 (D. Minn. Dec. 13, 2018) (MN); *Kousis v. Fid. & Guar. Ins. Underwriters, Inc.*, No. 22-06530 ,2023 WL 6141237, at *6 (D.N.J. Sept. 20, 2023) (NJ); *Nicolosi v. BRG*

Plaintiffs do not even attempt to plead such facts. The Complaint contains only conclusory allegations about Plaintiffs and the Multi-State Consumer Protection Class Members entitlement to recover punitive damages. *See, e.g.*, Compl. ¶169 ("Defendant's acts were done maliciously, oppressively, deliberatively, with intent to defraud . . . [and] warrants an assessment of punitive damages"). Plaintiffs' mere "label and conclusions" that they and the putative class are entitled to punitive damages are woefully inadequate. As a result, Plaintiffs' request for punitive damages should be stricken from the Complaint.

## V.        CONCLUSION

For the foregoing reasons, Defendant Similasan requests that the Court dismiss Plaintiffs' Consolidated Class Action Complaint with prejudice.

Respectfully submitted this 31st day of January, 2024.

---

*Sports, Inc.*, 18 CV 1452, 2019 WL 5695852, at *8 (E.D.N.Y. Aug. 21, 2019) (NY); *Waters v. Mitchell*, 600 F. Supp. 3d 1177, 1187 (W.D. Wash. 2022) (WA).

**GORDON REES SCULLY MANSUKHANI, LLP**

/s/ *Gregory S. Hearing II*
Thomas B. Quinn
Gregory S. Hearing, II
Megan A. Jones
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Telephone:  (303) 534-5160
tquinn@grsm.com
ghearing@grsm.com
mzjones@grsm.com

*Attorneys for Defendant*

**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**

John C. Dougherty
Katherine N Galle
One Financial Center
Boston, MA. 02111
Telephone:  (617) 542-6000
jcdougherty@mintz.com
kngalle@mintz.com

*Daniel J. Herling
*Geoffrey A. Friedman
*Paige E. Adaskaveg
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone:  (415) 432-6000
djherling@mintz.com
gafriedman@mintz.com
peadaskaveg@mintz.com

*Admissions Applications Forthcoming*

## Judge Domenico's Practice Standard III(A)(1) Certification

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) as modified by the Court's order (ECF 39) granting Defendant permission to file a motion to dismiss not to exceed 9,500 words.

## D.C. Colo. LCivR 7.1 Certification

The parties conferred pursuant to D.C.COLO.LCivR 7.1(a) and this Court's Practice Standards III(D). Plaintiffs oppose the relief sought.

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2024 a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Linda S. Montoya*
For Gordon Rees Scully Mansukhani, LLP