IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:23-cv-02511-DDD-STV

DAVID PLOWDEN;
MARIO ORTEGA; and
KAMILLE FAYE VINLUAN-JULARBAL,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

SIMILASAN CORP.,

      Defendant.

---

ORDER GRANTING MOTIONS FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND
ATTORNEY FEES, COSTS, AND SERVICE AWARDS

---

The plaintiffs allege that the defendant marketed eyecare products as homeopathic drugs without obtaining required FDA approvals, in violation of various state statutory and common laws. They bring a class action under Federal Rule of Civil Procedure 23. The parties have reached a settlement agreement, and the plaintiffs move for final approval of that settlement. Doc. 73. They also move for attorney fees, costs, and service awards for the named plaintiffs. Doc. 79. For the following reasons, the motions are granted.

## BACKGROUND[1]

The defendant sold a number of eyedrops that it marketed as homeopathic remedies to relieve various eye symptoms such as redness and dry eyes. The plaintiffs allege that the defendant did not obtain the required FDA approvals to market and sell its eyecare products as homeopathic drugs; that the defendant's products were labeled as sterile when they were not; and that the products' packaging failed to warn of the risks associated with the use of silver sulfate. Doc. 32 at 2-4, 7-18. The plaintiffs contend that the defendants' eyecare products were sold illegally and that the misrepresentations on and omissions from the products' packaging misled consumers in violation of various state laws. *Id.* at 18-24, 29-25. The named plaintiffs bring this suit on behalf of themselves and similarly situated consumers. *Id.* at 25-28.

After the exchange of limited discovery, the parties engaged in mediation, and following approximately a month and a half of negotiation, they reached a settlement agreement. Doc. 67 at 9; *see also* Doc. 67-2. The key terms of that settlement agreement are as follows:[2]

- A Settlement Amount of $3,575,000, which will be distributed to eligible Settlement Class Members after Notice and Administrative Costs, Attorney Fees and Costs, and Service Awards are deducted;

- An award of attorney fees to Class Counsel not to exceed one-third of the Settlement Amount, and reimbursement of Class Counsel's verifiable litigation costs;

- A Service Award of $2,500 to each Named Plaintiff;

---

[1]  In this Order, all pinpoint citations to the record use the blue page number appended by the Court's Electronic Case Filing system at the top of each page, which may differ from a document's internal pagination.

[2]  Capitalized terms in this Order that are not otherwise defined have the meaning ascribed to them in the Class Action Settlement Agreement and Release, Doc. 67-2.

- A Cash Award to eligible Claimants of $2.50 per Covered Product purchased during the Class Period, with a cap of $10 per household absent Valid Proof of Purchase. The Cash Awards may be proportionately reduced or increased on a *pro rata* basis after the Calculated Cash Award Total and Net Settlement Fund are determined; and

- Any amount remaining in the Net Settlement Fund after payment of all eligible Claims will be donated to the Public Justice Foundation.

*See* Doc. 67-2.

On February 20, 2025, I adopted the recommendation of Magistrate Judge Varholak and preliminarily certified a Rule 23 class defined as:

> All Persons in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Covered Product from September 11, 2017, until the Preliminary Approval Date.

Doc. 70 at 2 (adopting Doc. 69). The following persons are specifically excluded from the class:

> (i) Defendant and its respective subsidiaries and affiliates, members, employees, officers, directors, agents, and representatives and their family members;
>
> (ii) Class Counsel;
>
> (iii) The judges who have presided over this action;
>
> (iv) Local, municipal, state, and federal governmental agencies; and
>
> (v) All persons who have timely elected to become Opt-Outs from the Settlement Class in accordance with the Court's Orders.

*Id.* at 2-3. I also preliminarily approved the parties' settlement agreement, preliminarily appointed Class Representatives and Class Counsel, appointed a Claims Administrator, and approved the Class Notice, Class Notice Program, and Claim Form as the best notice practicable under the circumstances. *Id.* at 3, 4.

The Claims Administrator has executed the Class Notice Program in accordance with the terms of the settlement agreement. Doc. 75 at 2-3.

On April 21, 2025, the plaintiffs moved for final approval of the settlement and for attorney fees, costs, and service awards in accordance with the terms of the settlement agreement. Docs. 73, 79; *see also* Docs. 74-78, 80-87. On July 17, 2025, a final fairness hearing was held. Doc. 90. At the hearing, Class Counsel represented that to date the Claims Administrator has received nearly 100,000 Claim Forms. *See also* Doc. 75 at 3-4 (21,137 Claim Forms received as of April 21, 2025). The Class Administrator received only two timely opt-out requests. Doc. 87 at 1-2. Neither the Court nor the parties received any written objections to the proposed settlement, *see* Doc. 75 at 4; Doc. 76 at 2, and no objectors appeared at the hearing.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d). *See* Doc. 32 at 4-6.

## DISCUSSION

The review and approval of a class-action settlement proceeds in three steps: (1) preliminary approval of the proposed settlement after submission of a written motion including the proposed settlement and proposed class notice; (2) dissemination of notice of the settlement to all affected class members; and (3) a final fairness hearing at which class members may be heard regarding the settlement and evidence and argument regarding the fairness, adequacy, and reasonableness of the settlement may be presented. *Hunter v. CC Gaming, LLC* (*Hunter I*), No. 19-cv-01979-DDD-KLM, 2020 WL 13444205, at *3 (D. Colo. May 12, 2020) (citing *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 123 (D. Colo. 2016); *Manual for Complex Litigation (Fourth)* §§ 21.632-34 (2004)). These steps have been completed, and I now certify the Rule 23 class for settlement purposes and finally approve the proposed settlement agreement.

## I.   Final Certification of Rule 23 Class

Under Rule 23, one or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). If those requirements are met, a court may certify a class if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis" that the requirements of Rule 23 are met. *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 685 (D. Colo. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)).

### A.   Numerosity of Class Members

"A certifiable class must be so numerous that joinder is impracticable." *Helmer v. Goodyear Tire & Rubber Co.*, No. 12-cv-00685-RBJ-MEH, 2014 WL 1133299, at *3 (D. Colo. Mar. 21, 2014) (citing *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006)). "Numerosity also requires that the members of the class be ascertainable with the use of objective criteria." *Id*. As discussed above, the proposed class here is defined by objective criteria, and the Claims Administrator has received nearly 100,000 Claim Forms to date. Settlement Class Members may continue to submit Claim Forms until October 15, 2025. *See* Doc. 67-2 at 3. As the Court found at the preliminary-certification stage, joinder

of this many plaintiffs would be impracticable, and the numerosity requirement is satisfied. *See* Doc. 69 at 6.

### B. Commonality of Legal and Factual Questions

"A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-95 (10th Cir. 2010). Class members must "possess the same interest and suffer the same injury." *Trevizo*, 455 F.3d at 1163 (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982)). Commonality still exists if class members' claims differ factually but challenge the application of a commonly applied policy. *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999). As the Court previously found, the question at the core of the case—"whether or not the Covered Products were illegal to sell"—is common to all Settlement Class Members. Doc. 69 at 7. The proposed class satisfies the commonality requirement.

### C. Typicality of Representative Plaintiff's Claims

"A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 WL 2149602, at *3 (D. Colo. June 1, 2011) (citing *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). Here, the Named Plaintiffs challenge "the same allegedly deceptive mislabeling and legal violations" that would be challenged by the class. Doc. 69 at 8. The typicality requirement is satisfied.

### D.  Adequacy of Representation

The adequate representation requirement concerns both the competence of the class representatives' counsel and the representatives' willingness and ability to control the litigation and to protect the interests of the class. *Maez v. Springs Auto. Grp., LLC*, 268 F.R.D. 391, 396-97 (D. Colo. 2010) (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)). Resolution of two questions determines adequacy: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002); *see also* Fed. R. Civ. P. 23(g)(1)(A)-(B), (4). "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of upholding the class, subject to later possible reconsideration." *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998). No conflicts of interest are apparent, and the fairness and reasonableness of the proposed settlement, *see infra* Part II, supports the conclusion that the Named Plaintiffs and Class Counsel have prosecuted the action adequately and vigorously on behalf of the class. *See also* Doc. 69 at 9.

### E.  Predominance of Common Class Questions and Superiority of Class-Action Method of Adjudication

Matters pertinent to the predominance and superiority inquiry include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating

the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *Pliego*, 313 F.R.D. at 127. Here, the dominant inquiry for all the class members' claims "is whether the Covered Products are illegal and mislabeled homeopathic drugs . . . such that reasonable consumers were misled." Doc. 69 at 10 & n.2. The predominance requirement is satisfied.

And a class action is superior to other available methods of adjudicating the predominant issues because (a) the absent class members to date have shown no interest in controlling the prosecution of separate actions, (b) the Court is not aware of any other litigation regarding this controversy, (c) it is desirable to concentrate the relatively small individual claims, and (d) a class action is superior to individual suits in terms of efficiency for the parties and the Court. Doc. 69 at 10-11; *see also Pliego*, 313 F.R.D. at 127.

All requirements are satisfied, and I therefore finally certify a Rule 23 settlement class defined as follows:

> All Persons in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Covered Product from September 11, 2017 until February 20, 2025, excluding (i) Defendant and its respective subsidiaries and affiliates, members, employees, officers, directors, agents, and representatives and their family members; (ii) Class Counsel; (iii) the judges who have presided over the Action; (iv) local, municipal, state, and federal governmental agencies; and (v) all Persons who have timely elected to become Opt-Outs from the Settlement Class in accordance with the Court's Orders.

## II.  Final Approval of Settlement

Under Rule 23, class-action claims may be settled only with court approval. Fed. R. Civ. P. 23(e). A court may approve a class-action settlement only after a hearing and on finding that the settlement is "fair, reasonable, and adequate," after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts typically apply the following factors when assessing the fairness of a proposed settlement: (1) whether the proposed settlement was fairly and honestly negotiated, (2) whether serious questions of law and fact exist that place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (4) the judgment of the parties that the settlement is fair and reasonable. *Pliego*, 313 F.R.D. at 128 (citing *Rutter*, 314 F.3d at 1188); *accord Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *4 (D. Colo. Nov. 11, 2013).

*First*, I find that the proposed settlement was fairly and honestly negotiated at arm's length and was not the product of fraud or collusion. As described above, the parties reached an agreement after over a month

of negotiation facilitated by a mediator. At the final fairness hearing, both sides represented that this was an adversarial process. The settlement negotiations took place after the exchange of discovery. And both sides were represented by competent counsel. *See* Doc. 69 at 11-12; Doc. 74 at 15-16.

*Second*, I find that serious questions of law exist that place the ultimate outcome of the litigation in doubt. *See* Doc. 69 at 12; Doc. 74 at 18-19. A motion to dismiss filed by the defendant was pending at the time of the settlement. *See* Docs. 42, 49, 50. As Magistrate Judge Varholak found, a "recovery was by no means guaranteed." Doc. 69 at 12.

*Third*, I find that the value of an immediate recovery outweighs the mere possibility of future relief for the plaintiffs after protracted and expensive litigation, including the costs, risks, and delay of trial and appeal. *See* Doc. 69 at 12; Doc. 74 at 18-19. This dispute presents risk for both sides. And if the plaintiffs' claims survived the defendant's motion to dismiss, a final resolution would only occur after the parties incurred significantly more litigation expense through continued discovery, motions practice, and a potential trial and appeal. The contested issues make the immediate recovery provided by the settlement outweigh the possibility of future relief for the plaintiffs. Settling now to avoid the risk of further litigating these issues is reasonable for both sides.

*Fourth* and finally, I agree with the judgment of the parties that the settlement is fair and reasonable. *See* Doc. 74 at 16-18, 19-24; Doc. 69 at 12. The Cash Awards of $2.50 per product, or approximately 25% of a full refund, will provide adequate relief to the class members in relation to their potential recovery should the case proceed, taking into account

the associated risks, costs, and delay.[3] The method of processing claims
and distributing relief to class members is fair and effective, and the
settlement treats class members equitably relative to each other with
respect to the Cash Awards. And the modest proposed Service Awards
are reasonable—courts regularly give such awards both "to provide an
incentive to act as a named plaintiff" and "to compensate named plain-
tiffs for the work they performed."[4] *Chieftain Royalty Co. v. Enervest*

---

[3]    As noted above, the Class Administrator has received approxi-
mately 100,000 Claim Forms to date. Generously assuming that (1) the
number of Claim Forms doubles during the three months remaining in
the Claim Period (given that the number increased by approximately
80,000 during the three months between the plaintiffs' motion for final
approval and the final fairness hearing); (2) all Claim Forms submitted
are valid; and (3) each Claimant is due a Cash Award between $2.50 and
$10, then the Calculated Cash Award Total would be between $500,000
and $2M. After subtracting the approved Attorney Fees and Costs and
Service Awards, *see infra* Part III, and the estimated Administrative
Costs, *see* Doc. 67-2 at 87, 108, the Net Settlement Fund will be between
$1,667,517 and $2,072,517. It thus appears that the Settlement Amount
will adequately cover the anticipated Claims.

[4]    The Eleventh Circuit cast doubt on the propriety of service awards
in federal-question cases in *Johnson v. NPAS Sols., LLC* (*Johnson I*),
975 F.3d 1244 (11th Cir. 2020). The Tenth Circuit has not squarely ad-
dressed the argument presented in that case, *see Chieftain Royalty*, 888
F.3d at 466-67 (finding argument forfeited), but the other courts to have
done so have rejected it. *See Scott v. Dart*, 99 F.4th 1076, 1084-88 (7th
Cir. 2024) (declining to follow *Johnson I* and noting that First, Second,
and Ninth circuits have also expressly rejected it (collecting cases));
*Johnson v. NPAS Sols., LLC* (*Johnson II*), 43 F.4th 1138, 1139 & n.2
(11th Cir. 2022) (Pryor, Wilson, Jordan & Rosenbaum, JJ., dissenting
from denial of rehearing en banc) ("[S]ince *Johnson I* issued, every court
outside this circuit to have considered it has declined to follow it." (col-
lecting district-court cases)). And district courts in the Eleventh Circuit
have held that *Johnson I* does not govern service awards in diversity
cases like this one. *See, e.g.*, *Venerus v. Avis Budget Car Rental, LLC*,
674 F. Supp. 3d 1107, 1109-10 (M.D. Fla. 2023) (citing *Chieftain Roy-
alty*, 888 F.3d at 468 (state law applies to service awards in diversity
cases)); *Arnold v. State Farm Fire & Cas. Co.*, No. 2:17-cv-148-TFM-C,
2023 WL 7308098, at *1 (S.D. Ala. Nov. 6, 2023) (collecting cases).

*Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 464-68 (10th Cir. 2017). The Named Plaintiffs "participated in the investigation and prosecution of the Action, attended client conferences and fully and completely cooperated with Class Counsel in providing all necessary information required to successfully resolve this Action and deliver the benefits to the Settlement Class." Doc. 80 at 23. I find the $2,500 awards to be fair and reasonable to compensate them for the work they performed.[5] Class counsel's attorney fees and costs are also reasonable, as discussed below. *See infra* Part III.

In sum, I find the proposed settlement to be fair, reasonable, and adequate, and it is therefore approved.

## III. Attorney Fees and Costs

"The court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Notice of Class Counsel's motion for attorney fees and costs

---

Though the multi-state nature of the class claims in this case complicates the choice-of-law analysis, I note that both Florida and California (where the Named Plaintiffs are citizens), as well as the general weight and trend of authority, allow reasonable service awards in class-action cases. *See Venerus*, 674 F. Supp. at 1110 (citing *Altamonte Springs Imaging, L.C. v. State Farm Mut. Auto. Ins. Co.*, 12 So. 3d 850, 857 (Fla. Dist. Ct. App. 2009)); *In re Cellphone Termination Fee Cases*, 113 Cal. Rptr. 3d 510, 521-22 (Cal. Ct. App. 2010); *Hunter v. CC Gaming, LLC* (*Hunter II*), No. 19-cv-01979-DDD-KLM, 2020 WL 13444208, at *8 (D. Colo. Dec. 16, 2020) (noting trend of authority).

[5]   *See German v. Holtzman Enters., Inc.*, No. 19-cv-03540-PAB-STV, 2024 WL 809898, at *3 (D. Colo. Feb. 27, 2024) (approving $10,000 each to two named plaintiffs); *Stanley v. Panorama Orthopedics & Spine Ctr., P.C.*, No. 1:22-cv-01176-RM-SBP, 2024 WL 4546178, at *2 (D. Colo. Oct. 7, 2024) (approving $10,000 each to two named plaintiffs); *Valverde v. Xclusive Staffing, Inc.*, Nos. 16-cv-00671-RM-NRN, 17-cv-01602-RM-NRN, 2020 WL 4057585, at *2 to *3 (D. Colo. July 20, 2020) (approving $20,000 each to five class members).

was directed to class members in a reasonable manner as required by Rule 23(h)(1). *See* Doc. 80 at 8, 23; Doc. 67-2 at 72-74; Doc. 75-2 at 2, 3; *Important Documents – Similasan Eye Relief Settlement*, https://www. homeopathiceyedropsettlement.com/important-documents (last visited July 18, 2025). As noted above, no class member has lodged any objection. I find that the requested fees and costs are reasonable.

Two methods exist for determining attorney fee awards in common-fund class-action cases: the percentage-of-the-fund method, and the lodestar method. *Chieftain Royalty*, 888 F.3d at 458. The percentage-of-the-fund method is preferred. *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1263 (10th Cir. 2023). Courts consider the "*Johnson* factors" when assessing the reasonableness of a fee request:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 1263 & n.1; *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

Here, the requested attorney fee award is one-third of the Settlement Amount, as contemplated by the settlement agreement. Doc. 67-2 at 36. I have reviewed the plaintiffs' brief in support of their motion and the declarations of Class Counsel. Docs. 80-84. I also note that at the final fairness hearing, the defendant's counsel represented that Class Counsel have "done a lot of work in this case," represented their clients zealously, and were "very professional and courteous." Based on this record, I find that *Johnson* factors (1), (2), (3), (4), (5), (6), (7), (8), (9), (10),

and (12) all weigh in favor of finding that the requested fee is reasonable. *See* Doc. 80 at 15-20; Doc. 85 at 5-9; *see also, e.g.*, *Voulgaris*, 60 F.4th at 1264 ("The district court properly exercised its discretion in determining that 33% 'falls within the range of fee percentages awarded in securities class actions and other comparable complex class actions in this Circuit.'"); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455 n.2 (10th Cir. 1988) (collecting cases treating awards from 22% to 37.3% as reasonable); *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) ("[A]ttorneys' fees of one-third [of the common fund] or thereabouts are generally deemed reasonable."). And as a cross-check, the requested percentage-of-the-fund award represents a 1.53 multiplier of Class Counsel's lodestar fees, *see* Doc. 80 at 21-22, which is well within the generally accepted reasonable range. *See, e.g.*, *Mishkin v. Zynex, Inc.*, Nos. 09-cv-00780-REB-KLM, 09-cv-00816-REB-KLM, 09-cv-00829-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sept. 14, 2012) (collecting cases approving lodestar multipliers between 2.5-4.6). I also find that the requested $23,316.42 in costs were reasonably incurred. *See* Doc. 81 at 11; Doc. 82 at 7; Doc. 83 at 6; Doc. 84 at 7; *Krant v. UnitedLex Corp.*, No. 23-2442-DDC-TJJ, 2024 WL 5187565, at *9 (D. Kan. Dec. 20, 2024) (approving costs of $28,755.17 where they "were necessary to litigate this case effectively, and were of the type counsel normally would charge a paying client"); *Beasley v. TTEC Servs. Corp.*, Nos. 22-cv-00097-PAB-STV, 22-cv-00347-PAB-STV, 2024 WL 710411, at *7 (D. Colo. Feb. 21, 2024) (approving costs of $14,080.53 for "filing fees, legal research, postage, and mediation expenses").

## CONCLUSION

It is **ORDERED** that:

Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, **Doc. 73**, is **GRANTED**;

The Court **APPROVES** the parties' Class Action Settlement Agreement and Release, Doc. 67-2, and incorporates the terms of that agreement into this Order;

Named Plaintiffs David Plowden, Mario Ortega, and Kamille Faye Vinluan-Jularbal are **APPOINTED** as Class Representatives;

Melissa S. Weiner of Pearson Warshaw, LLP; Nick Suciu and Rachel Soffin of Milberg Coleman Bryson Phillips Grossman, PLLC; Jonas Jacobson of Dovel & Luner, LLP; and William H. Anderson of Handley Farah & Anderson PLLC are **APPOINTED** as Class Counsel;

The Court **CERTIFIES** a Rule 23 settlement class defined as:

> All Persons in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Covered Product from September 11, 2017 until February 20, 2025, excluding (i) Defendant and its respective subsidiaries and affiliates, members, employees, officers, directors, agents, and representatives and their family members; (ii) Class Counsel; (iii) the judges who have presided over the Action; (iv) local, municipal, state, and federal governmental agencies; and (v) all Persons who have timely elected to become Opt-Outs from the Settlement Class in accordance with the Court's Orders.

The Opt-Out List of Settlement Class Members who have timely and properly requested to be excluded from this Settlement, Doc. 87-1, is approved. I find that the list is a complete list of all Settlement Class Members who have timely requested exclusion from the Settlement Class. The individuals on that list will neither share in, nor be bound by, this

Order, nor any part of the Settlement (except that Opt-Outs who subsequently submit Claim Forms during the Claim Period shall be considered part of the Settlement Class);

In exchange for the benefits conferred by the Settlement, the Named Plaintiffs and all Settlement Class Members who have not properly opted out of the Settlement will be deemed to have conclusively compromised, settled, dismissed, and released any and all Released Claims against Defendant and the Released Persons, to the full extent provided by the Release set forth in the Settlement Agreement;

As of the Effective Date of the settlement, the Named Plaintiffs and Settlement Class Members who have not properly opted out of the Settlement, whether or not they have submitted a valid Claim Form, are barred and enjoined from filing, commencing, prosecuting, intervening in or participating (as class members or otherwise) in any other lawsuit or other proceeding, in any jurisdiction, that is based on or related the claims and causes of action or the facts and circumstances giving rise to the Action or the Released Claims during the class period. Settlement Class Members who have not properly opted out of the Settlement are also barred and enjoined from organizing a separate class for purposes of pursuing as a purported class action any lawsuit or other proceeding (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action) based on or relating to the claims and causes of action or the facts and circumstances giving rise to the Action and/or the Released Claims during the class period, except that Settlement Class Members are not precluded from participating in any investigation or suit initiated by a state or federal agency;

The Settlement and this Order will be binding on, and claim preclusive in, any pending or future lawsuits brought by or on behalf of Named

Plaintiffs or Settlement Class Members, as well as their respective agents, heirs, executors or administrators, successors and assigns, which bring claims covered by the Release included in the Settlement;

The Parties are authorized, without the need for further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and all Exhibits thereto as are (i) consistent in all material respects with this Order, and (ii) do not limit the rights of the Parties or Settlement Class Members;

Plaintiffs' Motion for Attorney Fees, Costs, and Service Awards, **Doc. 79**, is **GRANTED**. Class Counsel is awarded attorney fees of $1,191,666.66 and $23,316.42 for reimbursement for costs incurred in pursuing this Action and achieving the Settlement. A Service Award of $2,500.00 is granted to each Named Plaintiff;

Nothing in this Order, the Settlement Agreement, or any related proceeding, may be construed, or used as evidence or a presumption of, an admission of liability or concession by either party, nor as evidence of a misrepresentation or omission in any statement approved or made by Defendant or Released Persons, nor of the suitability of the claims brought in the Action for class treatment. Defendant has denied all of Named Plaintiffs' allegations and continues to deny such allegations. Named Plaintiffs continue to believe their allegations have merit. The Settlement and this resulting Order represent a compromise of disputed allegations;

The Court will retain jurisdiction for implementation and enforcement of the Settlement and the Settlement Agreement; and

This action is **DISMISSED WITH PREJUDICE**, without fees or costs except as provided in this Order, and the Clerk of Court is **DIRECTED** to enter a final judgment and close the case.

DATED: July 21, 2025                    BY THE COURT:

Daniel D. Domenico
United States District Judge